**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RUSSELL AND JUNE OSBORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-2252 |
| | § | |
| EKPSZ, LLC, DBA TEXAS FINAL | § | |
| JUDGMENTS, LLC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an action under the Fair Debt Collection Practices Act (FDCPA).[1]  One month after

the plaintiffs moved for leave to file a second amended complaint, the defendant moved for

judgment on the pleadings under Rule 12(c), (Docket Entry No. 21), and responded to the plaintiffs'

motion for leave to amend, (Docket Entry No. 22).  The motion for judgment on the pleadings

argued that the content of the debt-collection letter refuted the plaintiffs' claims.  (Docket Entry No.

21, at 3–8).  The response to the plaintiffs' motion for leave to amend argued that the defendant had

been unfairly prejudiced by the plaintiffs' changing allegations and that the proposed amendment

would be futile because the claims in the second amended complaint fail as a matter of law.  (Docket

Entry No. 22, at 4–13).  The defendant asked for the legal fees it incurred to date if the court grants

leave to amend.  (*Id.*, at 12).  The plaintiffs have responded to the motion for judgment on the

pleadings, (Docket Entry No. 23), and replied to the defendant's response opposing leave to amend,

(Docket Entry No. 24).

---

[1]  15 U.S.C. § 1692 *et seq.*

Based on the pleadings; the motions, responses, and replies; and the relevant law, the plaintiffs' motion for leave to file the second amended complaint (Docket Entry No. 15) is granted as to the deletion of the state-law claims and the FDCPA claims under § 1692e(3) and (5); granted as to the claim under § 1692g(a)(4)-(a)(5); granted as to the class-action allegations with respect to this claim; and denied as to the other FDCPA claims.  The defendant's motion for judgment on the pleadings (Docket Entry No. 21) is granted in part and denied in part.  The motion for judgment on the pleadings is denied as to the claim under § 1692g(a)(4)-(a)(5), and granted as to the other claims. A status conference is set for **October 3, 2011**, at 10:30 a.m. in Courtroom 11-B to set a schedule to resolve the remaining claims.

The reasons for these rulings are explained below.

## I.    Background

In April 2010, the plaintiffs, Russell and June Osborn, received a one-page letter from the defendant, Ekpsz, LLC d/b/a Texas Final Judgments, LLC.  The letter sought to collect a $3,639.29 judgment entered against June Osborne in a justice of the peace court in September 2009.  The letterhead identified the sender as "TEXAS FINAL JUDGMENTS, LLC," with an address in Lakeway, Texas.  (Docket Entry No. 15-1, at 4).  Below this letterhead, aligned to the left, the letter listed the addressee, June Osborn, and gave her address.  (*Id.*).  The subject line stated in bold font: "Cause No. CV31C0044160, Pharia L.L.C. v. JUNE OSBORN, in the Justice Court of HARRIS County, Texas."  (*Id.*).  The body of the letter stated:

> Dear Mr or Ms OSBORN:
>
> On 9/22/2009, a judgment was entered against you personally in the above referenced lawsuit.  It is our understanding that you are not represented by an attorney at this time.  If you are represented by an

2

attorney, please forward this Notice to your attorney and direct them to contact us at their earliest convenience.

The judgment taken against you has resulted in an outstanding balance due of <u>$3,639.29</u>.  Note this balance amount does not include post-judgment interest, which we are entitled to collect.  We will exclude post-judgment interest if you contact us immediately to arrange payment.

Do not avoid dealing with this judgment debt as it may be abstracted in any county in which you own property and in the county in which you live.  In addition, the judgment will continue to grow with interest and may remain on your financial record until resolved.

We are willing to work with you and would like to end this matter amicably.  However, if we do not hear from you within the next thirty (30) days, we will direct our attorneys to send a Notice of Deposition with Subpoena Duces Tecum or Request for Production of Documents and Interrogatories.  You will be required to appear at a deposition for the taking of your sworn testimony and bring certain documents disclosing your finances or you will be required to produce said documents and answer interrogatories at our attorney's office.   To avoid the sworn deposition and\or production of documents, please contact our office at the following number:

(*Id.*).  The defendant's phone number followed, centered on the page and in larger font.  (*Id.*).  The

letter was signed by "Texas Final Judgments, LLC."  Below the signature line, the letter included

a notice—in bold letters and in the same font size as the body of the letter—that stated, in relevant

part:

IMPORTANT NOTICE.  Federal law gives you 30 days after you receive this letter to dispute the validity of the debt or any part of it.  Unless you dispute this debt, or any portion of it, within 30 days from receipt of this notice, we will assume the debt to be valid.  If you notify us within 30 days after receipt of this notice that you dispute the debt, or any portion of it, we will obtain verification of the debt or copy of the judgment against you and provide you a copy.  If you make a request within 30 days of receipt of this notice, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.

(*Id.*).  A bar code was beneath this paragraph.  (*Id.*).

The plaintiffs filed a three-count complaint against Ekpsz, alleging that by sending the letter, the defendant violated the FDCPA, the Texas Debt Collection Practices Act,[2] and the Texas Deceptive Trade Practices Act.[3]  (Docket Entry No. 1).  Ekpsz filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  (Docket Entry No. 8).  The plaintiffs responded by filing a motion for leave to file a first amended complaint.  (Docket Entry No. 9).  This court granted the plaintiffs' motion and dismissed the defendant's motion to dismiss as moot.  The first amended complaint alleged violations of the same federal and state acts.

Before the defendant responded to the first amended complaint, the plaintiffs filed a motion for leave to file a second amended complaint.  (Docket Entry No. 15).  The proposed second amended complaint drops the state-law causes of actions and the FDCPA causes of action under §§ 1692e(3) and (5), re-alleges the remaining FDCPA violations and adds new ones, and adds allegations seeking class certification for those violations under Rule 23(b)(3).  The proposed second amended complaint alleges violations of the following FDCPA provisions:

(1) 15 U.S.C. § 1692g(a)(4)-(a)(5), because the statutorily-required validation notice did not inform the plaintiffs that if they wanted to request verification of the alleged debt or information about the original creditor, their request had to be *in writing*;

(2) § 1692e(9), because the debt collection letter falsely implied that it was authorized or approved by a Texas court;

---

[2] TEX. FIN. CODE § 392.001 *et seq.*

[3] TEX. BUS. & COM. CODE § 17.41 *et seq.*

(3) § 1692e(10), because the use of the name "Texas Final Judgments, LLC" would mislead consumers into believing the defendant was associated with a Texas court;

(4) § 1692f, because the defendant used fair and unconscionable means to collect the alleged debt by sending a letter that mimicked documents a Texas court would issue;

(5) § 1692g(b), because other language in the letter overshadowed or contradicted the debt validation notice; and

(6) § 1692e(10), because the letter misrepresented that a judgment has been entered against Russell Osborn, not just June Osborn.  (Docket Entry No. 15-1).

## II.    The Legal Standards

### A.    Leave to Amend

When there is no need to adjust a scheduling order to allow a pleading amendment, a motion for leave to amend "is evaluated under [Rule 15], which provides that the court 'should freely give leave when justice so requires.'"  *Cole v. Sandel Med. Indus., L.L.C.*, 413 F. App'x 683, 688 (5th Cir. 2011) (quoting FED. R. CIV. P. 15(a)(2)).  "[T]he language of this rule 'evinces a bias in favor of granting leave to amend'" and the court "must have a 'substantial reason' to deny a request for leave to amend."  *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citations omitted).  In deciding whether to grant leave to file an amended pleading under Rule 15(a), a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment.  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  Amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted."  *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

5

In determining futility, the court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

### B.    Rule 12(c)

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). The standard of review under Rule 12(c) is the same as that under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b) (6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).   The Court concluded that "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).   "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555).   "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without

a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

The court may consider documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

## C.     The FDCPA

The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" can have with a debtor.  15 U.S.C. § 1692.  To achieve this goal, the Act regulates communications related to debt collection (§ 1692c), prohibits conduct that tends to harass, abuse, or oppress consumers (§ 1692d), forbids debt collectors from making false, deceptive, or misleading representations (§ 1692e), proscribes unfair or unconscionable debt collection practices (§ 1692f), and requires that debt collectors advise consumers whose debts they seek to collect of specified rights (§ 1692g).  "Consumers may sue to enforce the Act's provisions and, if successful, recover actual damages, statutory damages, and attorney's fees and costs." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (5th Cir. 2008) (citing 15 U.S.C. § 1692k).  Although the Act imposes strict liability, it also "affords a narrow

carve-out . . . known as the 'bona fide error' defense." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011).  A debt collector may escape liability if it shows "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).

When deciding whether a debt collection letter violates the FDCPA, the court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004).  "That is, . . . [the court] must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.*  "At the same time [the court] do[es] not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Id.* (internal quotation marks and alteration omitted).  "The unsophisticated consumer isn't a dimwit.  She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (internal citations, quotation marks, and alteration omitted); *see also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("The hypothetical least sophisticated consumer does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." (citation and internal quotations marks omitted)).  She is not illiterate and can be expected to read the entire collection letter with some care. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005).  This standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors

against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor*

*v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

### III.    Analysis

#### A.    The § 1692g Claims

Under § 1692g, a debt collector who solicits payment must provide the consumer, within five

days of the initial communication, a written validation notice that sets out:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  A debt collector may violate § 1692g in two ways.  First, a debt collector

violates § 1692g by failing to provide the information the statute requires.  *DeSantis v. Computer*

*Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001).  Second, a debt collector violates § 1692g if other

language in its communication with consumers contradicts or overshadows the statutorily mandated

notice.  15 U.S.C. § 1692g(b).  To comply with § 1692g, more is required than merely including the

required disclosure in a letter to consumers; the required disclosure must also "be set forth in a form

and within a context that does not distort or obfuscate its meaning." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 (5th Cir. 2002); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) ("A [debt collection letter] overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'" (citation omitted)); *DeSantis*, 269 F.3d at 161 ("[T]he collector nonetheless violates the Act if it conveys [the required notice] in a confusing or contradictory fashion so as to cloud the required message with uncertainty.").

The plaintiffs allege both types of § 1692g violations. First, the plaintiffs allege that the defendant's letter violated subsections (a)(4) and (a)(5) by failing to state that requests under those subsections had to be in writing. The defendant admits that the section of the letter discussing how the plaintiffs could request verification of the debt and information about the original creditor did not mention that the request had to be in writing. The defendant argues that omitting this requirement did not violate the statute because it allowed a consumer to dispute the debt and request verification either orally or in writing, expanding rather than restricting statutory rights. The defendant contends that under the notice it provided in the collection letter, it had to verify the debt (as required by § 1692g(a)(4)), or disclose the name and address of the original creditor (as required by § 1692g(a)(5)), even if the plaintiffs made an oral request. Second, the plaintiffs allege that the body of the debt-collection letter overshadowed and contradicted the validation notice by compelling the plaintiffs to respond to the letter before the 30-day statutory verification period ended. The defendant responds that its letter does not confuse unsophisticated consumers about their right to obtain verification of their debt within 30 days of receipt of the letter. For the reasons explained below, this court concludes that the plaintiffs have stated a claim that the required validation notice

was incomplete, but have not stated a claim that the letter overshadowed or contradicted the validation notice.[4]

### 1.    The Claim that the Validation Notice Violated Subsections 1692g(a)(4) and (a)(5)

Under the FDCPA, a debt collector's validation notice must state that the debt collector will obtain and mail the consumer a verification of the debt or will provide the consumer with the name and address of the original creditor if the consumer disputes the debt or requests information about the original creditor *in writing* within 30 days of receiving the collection letter.  15 U.S.C. § 1692g(a)(4)-(a)(5).  The defendant's letter informed June Osborn that she could request verification of the alleged debt or information about the original creditor, but did not state that the request had to be in writing.  The letter did not fully comply with the statutory requirement.

The defendant argues that it did not violated subsections 1692g(a)(4) and (a)(5) by omitting the term "in writing" because its letter "afford[ed] Plaintiffs additional rights."  (Docket Entry No. 22, at 5).  The defendant contends that, consistent with the FDCPA's purpose, the validation notice section of its letter expanded rights by allowing consumers to obtain verification of their debts and information about original creditors through oral as well as written requests.  (*Id.*, at 6–7).  The courts that have addressed this issue have rejected such an argument and found similar language in a debt-collection letter to violate the statute.  These courts have emphasized the difference between a consumer's written as opposed to oral notification that it disputes an alleged debt.

---

[4]   In response to the defendant's motion to dismiss, the plaintiffs assert that the defendant's letter also violated  § 1692g(a)(1) because it failed to accurately state the debt amount.  (Docket Entry No. 24, at 23).  The plaintiffs contend that by failing to specify the amount of accrued interest, the letter leaves unsophisticated consumers uncertain about the magnitude of the debt.  But neither the first amended complaint nor the proposed second amended complaint alleges a violation of § 1692g(a)(1).

An oral notice of dispute of a debt's validity has different legal consequences than a written notice.  Section 1692g(b) provides that if the consumer notifies the collector of a dispute *in writing* within the 30-day period, the collector must cease collection activities until he obtains the verification or information required by subsections 1692g(a)(4) and (a)(5).  But if the consumer disputes the debt orally rather than in writing, the consumer loses the protections afforded by § 1692g(b); the debt collector is under no obligation to cease all collection efforts and obtain verification of the debt.  *Withers v. Eveland*, 988 F. Supp. 942, 947 (E.D. Va. 1997).  An oral dispute "triggers multiple statutory protections," but these protections are not identical to those triggered by a written dispute.  *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005).  As the Ninth Circuit has explained, the FDCPA "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing."  *Id.* at 1082.

The defendant's argument that its collection letter afforded the plaintiffs additional rights assumes that the defendant would have been legally obligated to provide the plaintiffs the information required by subsections 1692g(a)(4) and (a)(5) in response to oral requests.  This assumption is incorrect.  "The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute."  *Camacho*, 430 F.3d at 1081; *see also Bicking v. Law Offices of Rubenstein & Cogan*, --- F. Supp. 2d ----, 2011 WL 1740156, at *4 (E.D. Va. May 5, 2011) ("Nor does it matter whether Defendants would have honored an oral request.  A debt collector's statutory duty to verify the debt does not arise unless and until the debtor disputes the debt in writing." (internal citation omitted)); *Fasten v. Zager*, 49 F. Supp. 2d 144, 148–49 (E.D.N.Y.1999) ("Under Section 1692g(4), verification is triggered only by the consumer writing

a letter to the debt collector. Here, plaintiff's telephone call to defendant did not constitute such a request for verification.").

Every district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections (a)(4) and (a)(5) must be made in writing. *See, e.g., Bicking*, 2011 WL 1740156, at *3–4; *Beasley v. Sessoms & Rogers, P.A.*, No. 5:09-CV-43-D, 2010 WL 1980083, at *6–7 (E.D.N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. 2009); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 742–44 (N.D. Ill. 2003); *Carroll v. United Compucred Collections, Inc.*, No. 1-99-0152, 2002 WL 31936511, at *8–9 (M.D. Tenn. Nov. 15, 2002); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP.*, 217 F. Supp. 2d 336, 340–41 (E.D.N.Y. 2002).

The reasoning of these courts is persuasive. "Any consumer, not simply the least sophisticated consumer, who read [the defendant's] letter would not know that to secure her right to obtain verification of the debt and the identity of the original creditor, her dispute of the debt and request for the identity of the original creditor must be in writing." *Grief*, 217 F. Supp. 2d at 340. An unsophisticated consumer "could certainly interpret this letter to mean that she could obtain verification of the debt or the identity of the original creditor by calling [the defendant] at the telephone number provided on the letter." *Id.* Without a statement in the letter that requests for information under subsections 1692g(a)(4) and (a)(5) must be in writing, the unsophisticated consumer "is not simply uncertain of her rights under the statute, she is completely unaware of them." *Id.* (internal citation omitted).

Contrary to the defendant's argument, neither *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010), nor the Ninth Circuit's *Camacho* decision support a different

14

result.  In *Camacho*, the debt collector's letter stated that unless the consumer disputed the validity of the debt *in writing* within the 30-day statutory period, the debt collector would assume the debt to be valid.  430 F.3d at 1079.  The court held that this statement violated § 1692g(a)(3) because that provision did not require that the consumer dispute the debt *in writing* to prevent the debt collector from assuming the validity of the debt and to trigger other statutory protections that § 1692g(a)(3) gives consumers who dispute a debt.  *Id.* at 1080–82.  After concluding that the statute's plain meaning compelled the holding, the court stated that the FDCPA's purpose "is further advanced by an interpretation that allows [a consumer to dispute a debt] in either written or oral form."  *Id.* at 1082.  Citing this statement, the defendant argues that its letter "is also consistent with legislative intent" by allowing June Osborn to request debt verification or information about the original creditor orally as well as in writing.  (Docket Entry No. 22, at 6).  The defendant's argument ignores the difference between subsection (a)(3) of § 1692g—to which the Ninth Circuit's statement applies—and subsections (a)(4) and (a)(5).  Unlike subsection (a)(3), subsections (a)(4) and (a)(5) require a debt collector to inform consumers that they may request information under those subsections *in writing*.  The Ninth Circuit emphasized that "debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,'" but "can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute."  *Camacho*, 430 F.3d at 1081.  *Camacho* does not support the defendant's argument.

In *Jerman*, the plaintiff alleged that the defendant debt collector "violated § 1692g[(a)(3)] by stating that her debt would be assumed valid unless she disputed it in writing."  130 S. Ct. at 1609.  The district court held that the debt collector's validation notice violated § 1692g(a)(3) because that section did not have an "in writing" requirement.  The court granted summary judgment

15

to the defendant under the FDCPA's bona fide error defense.  *Id.* at 1609–10.   After the Sixth Circuit affirmed, the Supreme Court reversed, holding that the defense did not apply to FDCPA violations resulting from a debt collector's incorrect interpretation of the Act's legal requirements. *Id.* at 1611–12.  The defendant argues that because the Court held that "adding a writing requirement where there is none in the statute may violate the FDCPA" by decreasing rights available to consumers, in the present case, the defendant did not violate the FDCPA by increasing consumers' rights.  (Docket Entry No. 22, at 6).  Contrary to the defendant's contention, the Supreme Court "express[ed] no view about whether inclusion of an 'in writing' requirement in a notice to a consumer violates § 1692g[(a)(3)]."  *Id.* at 1610 n.3.  But even if including an "in writing" requirement would violate § 1692g(a)(3), the defendant's letter omitting this requirement would still violate subsections (a)(4) and (a)(5).  The defendant's letter did not expand the plaintiffs' statutory rights; absent a written request under subsections (a)(4) and (a)(5), "the debt collector would not be required to cease its collection efforts," which is one of the rights a consumer who submits a written request acquires.  *Grief*, 217 F. Supp. 2d at 340.  Moreover, "the FDCPA is a strict liability statute, and the debt collector violates the Act by failing to provide the information it requires."  *Id.*

The plaintiffs have stated a plausible claim based on the defendant's failure to state in the letter that a request under subsections 1692g(a)(4) and (a)(5) had to be in writing.  *See Nero*, 655 F. Supp. 2d at 206 ("The plain text of the FDCPA requires debt collectors to advise consumers of their rights in a prescribed manner, and [the defendant] failed to do so.").  The defendant's motion to dismiss is denied as to this claim.

### 2.   The Claim that the Letter Violated § 1692g(b)

A debt-collection letter sent "during the 30-day [statutory] period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  15 U.S.C. § 1692g(b).  As the Fifth Circuit has explained, "[c]ourts have generally found contradiction or apparent contradiction of the printed § 1692g notice where payment is demanded in a concrete period shorter than the 30-day statutory contest period." *Peter*, 310 F.3d at 349.  For example, in *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997), the debt- collection letter threatened legal action if the debtor did not pay within seven days.  Although the letter included a proper validation notice, the court held that the letter violated § 1692g by failing "to explain an *apparent* though not actual contradiction."  *Id.* at 500.  The court explained that the letter "leaves up in the air what happens if [the debtor] is sued on the eighth day . . . and disputes the debt on the tenth day," because the debtor "might well wonder what good it would do him to dispute the debt if he can't stave off a lawsuit."  *Id.* at 501.  "The net effect of the juxtaposition of the one-week and thirty-day crucial periods is to turn the required disclosure into legal gibberish," which, the court concluded, is "as bad as an outright contradiction."  *Id.*

In *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988), the debt collector's letter stated in capital letters and large, bold-face type that if the account was not paid within the next 10 days, the debt would be recorded in the debt collector's "master file," and that a good credit rating was the debtor's "most valuable asset."  "Beneath this language, in small, standard-face type, was the notice required by the statute."  *Id.*  Finding an FDCPA violation, the court explained that "the substance of the [letter] stands in threatening contradiction to the text of the debt validation notice."  *Id.* at 1226.  "The prominence and message of the 'master file' and 'most valuable asset' language, lead the least sophisticated debtor, and quite probably even the

17

average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the 'master file' of his local collection agency and will, accordingly, lose his 'most valuable asset,' his good credit rating." *Id.* Other courts considering similar collection letters have reached the same result. *See, e.g.*, *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) ("There is a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days."); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 84 (2d Cir. 1998) (holding that a letter requesting immediate payment or a valid reason for failure to make payment violated the FDCPA because it did not explain that the demand for immediate payment did not override the consumer's rights under § 1692g to seek validation of the debt); *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991) (holding that a collection letter that "demand[ed] 'IMMEDIATE FULL PAYMENT' and command[ed] the consumer to 'PHONE US TODAY,' emphasized by the word 'NOW' emblazoned in white letters nearly two inches tall against a red background" "flatly contradict[ed]" the validation notice on the reverse side).

By contrast, courts have held that letters that do not *demand* payment within the 30-day statutory period or that ask the debtor to contact the debt collector within that period do not contradict or overshadow the validation notice.  In *Peter*, the collection letter stated in capital letters that "full collection activity will continue until this account is paid in full" and that "to avoid further collection activity, your student loan must be paid in full."  310 F.3d at 349.  Noting that "there is no statutory requirement that collectors inform debtors that collection activity will stop pending the collector's response to the debtor's request for additional information on the debt or original

18

creditor," *id.* at n.3, the Fifth Circuit found no FDCPA violation because "the challenged language . . . did not demand payment in a specific time period shorter than 30 days," *id.* at 350.  *See also Wilson v. Quadramed Corp.*, 225 F.3d 350, 356 (3d Cir. 2000) (holding that a letter stating that "[o]ur client has placed your account with us for immediate collection" and that "[w]e shall afford you the opportunity to pay this bill immediately and avoid further action against you" did not violate § 1692g; because the letter presented the debtor with two options—paying the debt immediately to avoid further action or requesting debt verification—and did not emphasize any of the options, "the least sophisticated debtor would not be induced to overlook his statutory right to dispute the debt within thirty days").[5]

In *Terran v. Kaplan*, 109 F.3d 1428, 1430 (9th Cir. 1997), the debtor argued that the following statement overshadowed a collection letter's validation notice: "Unless an immediate telephone call is made to J SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action."  The Ninth Circuit held that "the request that the alleged debtor immediately telephone a collection assistant does not overshadow the language in the notice that the alleged debtor has thirty days in which to dispute the debt."  *Id.* at 1434.  The court emphasized "that the challenged language . . . does not require *payment* 'immediately,'" but instead requires a phone call.  *Id.*  "A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences.  For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that

---

[5]  The Fifth Circuit has described *Wilson* as a "difficult and close case as it falls between cases like *Savino* that confuse consumers by emphasizing immediate payment, and cases . . . that merely indicate that immediate payment is an option." *Peter*, 310 F.3d at 350 n.4.

debt directly conflicts with the protections for debtors set forth in section 1692g." *Id.* But a request for an immediate phone call does not contradict the validation notice because that request "simply encourages the debtor to communicate with the debt collection agency." *Id.*

Nothing in the defendant's debt-collection letter overshadows or contradicts the validation notice section of that letter. The format of the letter does not have the effect of concealing the notice. The notice appears on the front, shortly after the four paragraphs that form the body of the letter, and in the same font size. The letter emphasizes the validation notice over the preceding four paragraphs by printing the notice in bold-face font. And the notice clearly outlines the procedure June Osborn must follow to dispute the debt (though, as discussed above, the notice does not mention that her request must be in writing).

Contrary to the plaintiffs' allegations, the letter's substantive content would not confuse a consumer, measured under the least sophisticated consumer standard, about the right to request verification of the debt or information about the original creditor. The first paragraph informs the debtor that if she is represented by an attorney, she should ask that attorney to contact the defendant at his or her "earliest convenience." A request that the debtor's attorney promptly contact the debt collector does not conflict with the validation notice. By directing the debtor to contact her attorney, the letter makes it more likely that the debtor will—by talking to the attorney—understand her statutory rights. The second paragraph lists the outstanding balance of the alleged debt and informs the debtor that the collector "will exclude post-judgment interest" if the debtor contacts the defendant "immediately to arrange payment." Unlike the language in the collection letters in *Bartlett* and *Swanson*, this language does not demand immediate *payment*; rather, it encourages immediate *contact* with the debt collector to arrange payment by offering a financial incentive.

Courts have held that offering a financial incentive to payment does not violate the FDCPA even if consumers must pay within the 30-day statutory period to benefit from the incentive. *See, e.g., Day v. Allied Interstate, Inc.*, No. 09 Civ. 0495(BMC), 2009 WL 1139474, at *1 (E.D.N.Y. Apr. 27, 2009) ("A payment coupon is just a convenience in case the debtor wants to settle the debt. The convenience may subtly encourage a debtor to make a payment on a debt she believes is due, but it does not in any way contradict the validation notice advising the debtor of her right to dispute the debt within 30 days, as long as the validation notice is plainly stated."); *Gervais v. Riddle & Assocs.*, 479 F. Supp. 2d 270, 278 (D. Conn. 2007) ("[M]erely including a settlement offer within a validation notice does not direct a finding of overshadowing or contradiction."); *Harrison v. NBD Inc.*, 968 F. Supp. 837,  848 (E.D.N.Y. 1997) (holding that a discount offer that expires before the expiration of the 30-day validation period does not overshadow or contradict the validation notice even though the offer "extended an incentive for debtors to pay their account").  The defendant's offer to exclude prejudgment interest may present unsophisticated consumers with a difficult decision—whether to place an immediate phone call to arrange to pay the debt or to dispute the debt but forego the possibility of avoiding interest—but it does not confuse consumers about their right to dispute the alleged debt.

The third paragraph of the defendant's letter urges the debtor not to avoid dealing with the debt and lists possible consequences of inaction, including that the debt "will continue to grow with interest."  Letters that ask consumers not to avoid dealing with a debt do not violate the FDCPA. *See Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 664–65 (S.D.N.Y. 2006) ("[A] great number of courts have rejected the argument that the urgency conveyed by phrases such as 'immediate attention' by themselves overshadow an otherwise sufficient validation notice.").  Nor do letters that

"encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 417–18 (7th Cir. 2005); *see also Anthes v. Transworld Sys., Inc.*, 765 F. Supp. 162, 170 (D. Del. 1991) ("[L]anguage designed to encourage payment of the debt does not, in and of itself, overshadow a validation notice"). "Undeniably, one way to encourage someone with a true dispute to come forward and resolve that dispute is to inform him of the possible negative consequences of his continued inaction.  Promoting final resolution of such matters . . . is inherently beneficial." *Durkin*, 406 F.3d at 418 n.7.

The plaintiffs argue that read together, the second and third paragraphs would lead an unsophisticated consumer to believe "that only if she opted to disregard her statutorily-entitled rights, could she avoid an enlargement of the outstanding balance allegedly owed." (Docket Entry No. 24, at 23). "Stated otherwise, Defendant, through its letter, presented Plaintiffs with mutually exclusive opportunities: (1) Plaintiffs were entitled to thirty (30) days from receipt of Defendant's letter to dispute the validity of the subject debt, . . . but (2) if Plaintiffs chose to exercise that right, Defendant would enlarge the outstanding balance by including an unspecified amount of post-judgment interest." (*Id.*).  The 30-day validation period "is not a grace period: a debt collector is 'perfectly free' to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period," unless the consumer disputes her debt. *Durkin*, 406 F.3d at 416 & n.5.  A debt collector is not prohibited from presenting "mutually exclusive opportunities" in collection letters that do not confuse consumers about their rights.  The defendant's letter informed June Osborn, in bold letters, of her rights under § 1692g(a).  The defendant's offer to exclude prejudgment interest and the statement that the outstanding balance would continue to grow as interest accrued did not "distort or obfuscate" the statement that June Osborn had a right

to request verification of the debt or information about the original creditor by notifying the defendant within 30 days of receiving the letter.  *Peter*, 310 F.3d at 348; *see Gervais*, 479 F. Supp. 2d at 278 ("Ultimately, even if Defendant's validation notice described 'mutually exclusive' opportunities, this Court finds that Defendant's settlement offer was clearly distinguishable from the apprisal of Plaintiff's statutory rights under § 1692g.").

The fourth paragraph of the letter states that if the defendant "does not hear from [June Osborn] within the next thirty (30) days," it will direct its attorneys "to send a Notice of Deposition with Subpoena Duces Tecum or Request for Production of Documents and Interrogatories" and June Osborn will "be required to appear at a deposition for the taking of [her] sworn testimony."  The letter instructs June Osborn to call the defendant if she wants to "avoid the sworn deposition and/or production of documents."  The defendant's phone number is in the middle of the letter, in a font size three to four times larger than the body of the letter.  The plaintiffs allege that the threat of having to be deposed or produce documents, together with the prominent telephone number, "overshadows and obfuscates the independently defective validation notice" because the plaintiffs "would . . . feel compelled to respond before the expiration of the statutory verification period." (Second Am. Compl. ¶¶ 68, 69).  The plaintiffs also allege that "[t]he letter is confusing in that it fails to identify when the 'next thirty days' would be calculated from." (*Id.* ¶ 68).  Neither allegation states a claim under § 1692g(b).  Even if the letter is confusing as to when the 30-day period to call the debt collector to avoid legal action begins, the validation notice is clear that June Osborn has "30 days after [she] receive[s] this notice" to dispute the alleged debt or request additional information.  *See Jacobson*, 516 F.3d at 93 ("While the letter is . . . perhaps ambiguous as to when the thirty-day period begins, the validation notice clarifies any possible ambiguity.  It contains a clear and accurate

statement of the starting date, informing Jacobson that he has '30 days from receiving this notice' to submit the notice of dispute.").

The plaintiffs' argument that the letter would compel unsophisticated consumers to call the defendant is also unpersuasive.  "It does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted."  *Lerner v. Forster*, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003).  As in *Terran*,

> It is particularly significant that the challenged language in this matter does not require *payment* "immediately."  It merely requests a phone call.  A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences.  For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g.  The request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt.  This language simply encourages the debtor to communicate with the debt collection agency.  It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt.

*Terran*, 109 F.3d at 1434.  The letter at issue in this case is more specific than the letter in *Terran*. In this case, the letter specifies the legal action the defendant will take if the debtor does not call, but the letter does not demand immediate payment.  The letter would not confuse the least sophisticated consumer about her right to obtain verification of the alleged debt.

The defendant's motion to dismiss is granted as to the § 1692g(b) claim.

**B.     The § 1692e Claims**

Section 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and lists, in 16

24

subsections, examples of conduct that violates the FDCPA.  15 U.S.C. § 1692e.  The plaintiffs allege

three violations of § 1692e: one violation of § 1692e(9) and two violations of § 1692e(10).  Each

alleged violation is addressed below.[6]

First, the plaintiffs contend that the defendant's letter violates § 1692e(9) by falsely implying

that the letter was approved or authorized by a Texas court.  The plaintiffs allege that the collection

letter "uses an address block which is commonly associated with the Justice Courts and Civil

District Courts of the State of Texas."  (Second Am. Compl. ¶ 42).  The plaintiffs allege that a state-

court judge—Judge Mike Parrott—also uses a letterhead in which his name and address are centered

at the top of the page.  (*Id.*  ¶ 46).  The plaintiffs also allege that the letter contains a bar code in the

lower left corner and that a bar code also appears at a similar location on the bottom of the page of

documents the defendant submits to the court, the judge signs, and the defendant mails with the

collection letter.  (*Id.* ¶ 44).  According to the plaintiffs, the "use of the name 'Texas Final

Judgments, LLC' compounds the deceptive design and layout of the . . . letter and furthers the

impression that the . . . letter originated from, [was] authorized by, or [was] approved by a Texas

[c]ourt."  (*Id.* ¶ 43).

Section 1692e(9) prohibits "[t]he use or distribution of any written communication which

simulates or is falsely represented to be a document authorized, issued, or approved by any court .

. . , or which creates a false impression as to its source, authorization, or approval."  15 U.S.C. §

1692e(9).  "Courts have generally limited the application of § 1692e(9) to egregious situations

---

[6]   In response to the defendant's motion to dismiss, the plaintiffs assert that the defendant's letter also violated §
1692e(11) because the letter failed to disclose that the communication was from a debt collector.  (Docket Entry No. 24,
at 24).  But the complaint does not allege a violation of § 1692e(11) and the plaintiffs do not seek leave to amend to add
such an allegation.

where the debt collector overtly impersonates a government agency or where it attempts to hide its identity by using a false alias." *Sullivan v. Credit Control Servs., Inc.*, 745 F. Supp. 2d 2, 10 (D. Mass. 2010). The defendant's letter neither overtly impersonates a Texas court nor attempts to conceal the defendant's identity. The letter is printed on the defendant's letterhead and clearly identifies the defendant at the top of the page. The letterhead consists of the defendant's name, address, and phone number. The address includes a street number and does not refer to a courthouse. Contrary to the plaintiffs' contention, this simple and common letterhead format—centered at the top of the page—would not lead the least sophisticated consumer to believe that a Texas court authorized the collection letter, notwithstanding that a state-court judge uses a similarly formatted letterhead. Nor does the presence of a bar code on the defendant's letter and on documents submitted to or issued by a Texas court change the result. "Although established to ease the lot of the naive, the [least sophisticated consumer] standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008). The least sophisticated consumer would likely understand the difference between Texas Final Judgments, LLC, a business entity, and a Texas court. Such a consumer would not believe that because both a judge and a company use a common and simple three-line centered letterhead format, the company has an official court status, even if the company is called Texas Final Judgments, LLC and there is a bar code at the bottom of the letter. This court grants the motion to dismiss the § 1692e(9) claim.

Second, the plaintiffs allege that the defendant's use of the name Texas Final Judgments, LLC, violates § 1692e(10) because it misleads consumers into believing that the collection letter was

authorized or approved by a Texas court.  (Second Am. Compl. ¶¶ 51, 52).  Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  15 U.S.C. § 1692e(10).  For the reasons discussed above, the least sophisticated consumer would not conclude that the defendant's letter was authorized or approved by a Texas court.  *Cf. Dorner v. Commercial Trade Bureau of Cal.*, No. CIV-F-08-0083 AWI SMS, 2008 WL 1704137, at *5 (E.D. Cal. Apr. 10, 2008) (stating that including the designation "Inc." in a name is "a strong indication that the entity is a private company").  This court grants the defendant's motion to dismiss this claim.

Third, the plaintiffs allege that the defendant's letter violates § 1692e(10) because it "misrepresented that the judgment in question was entered against both Plaintiffs, whereas said judgment was entered only against June Osborn."  (Second Am. Compl. ¶ 76).  The plaintiffs further allege that the letter "threatened to take an action against Plaintiffs that could not be legally taken, or that was not actually intended to be taken, including threatening post-judgment actions against Plaintiff Russell Osborn, despite the fact that no judgment had been entered against him."  (*Id.* ¶ 77).  The least sophisticated consumer would not read the defendant's letter to state that a judgment had been entered against Russell Osborn or that legal action was threatened against him.  Russell Osborn's name does not appear in the letter.  Below the defendant's letterhead, the letter lists June Osborn's name and address.   The subject line of the letter states, in part, "Cause No. CV31C0044160, Pharia L.L.C. v. June Osborn."  Contrary to the plaintiffs' argument, the salutation line—"Dear Mr or Ms OSBORN"—does not suggest that the letter is addressed to Russell Osborn. The disjunctive "or" indicates that the letter has only one recipient, June Osborn, without identifying the recipient's gender.  This court grants the defendant's motion to dismiss this claim.

### C.    The § 1692f Claim

Section 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt" and lists, "[w]ithout limiting the general application of the foregoing," examples of conduct that violates the FDCPA. 15 U.S.C. § 1692f.  The plaintiffs do not allege that the defendant's letter violated one of the specific provisions.  Instead, the plaintiffs allege that the letter violated  § 1692f's general prohibition "by mailing, or causing to be mailed, a letter and forms to Plaintiffs which mimics a document issued by [a] Texas Court enclosed therewith."  (Second Am. Compl. ¶ 58).

Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e."  *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001).  Although a violation of § 1692f is not limited to conduct that falls within the statute's specific prohibitions, there is "a growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA." *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010).  *See, e.g.*, *Amina v. WMC Mortg. Corp.*, No. 10–00165 JMS/KSC, 2011 WL 1869835, at *16 (D. Haw. May 16, 2011); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1330 (S.D. Fla. 2009); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 n.10 (C.D. Cal. 1991).  Because the plaintiffs' § 1692f claim is based on the same conduct that forms the basis of their § 1692e(9) claim, they have failed to state a claim under § 1692f.  *See Foti*, 424 F. Supp. 2d at 667 ("Plaintiffs' Complaint is deficient in that it does not

identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA.").  The plaintiffs have also failed to state a claim because, as discussed above, the least sophisticated consumer would not conclude that the defendant's letter mimics a document issued by a Texas court.  The defendant's motion to dismiss is granted as to the § 1692f claim.

### D.    The Class Allegations and the Defendant's Request for Fees

The defendant argues that the motion for leave to amend should be denied because the plaintiffs "seek to redefine much of their case" by adding class allegations and because the defendant has already incurred substantial costs defending against the plaintiffs' action.  There is no substantial reason to deny the plaintiffs leave to amend to add class-action allegations as to the FDCPA claim that survives the pleading challenges.  The plaintiffs filed their motion for leave to amend before the defendant filed an answer to the first amended complaint and more than a month before the defendant filed its motion to dismiss the first amended complaint.  The plaintiffs have not moved for class-action certification and the defendant will not suffer any prejudice at this early stage of the litigation from the class allegations in the second amended complaint.

The defendant was not unfairly prejudiced by having to respond to multiple complaints because, as the defendant admits,  many of the arguments made in its motion to dismiss the first amended complaint apply to the plaintiffs' second amended complaint.  The costs incurred defending against the plaintiffs' action—which include costs related to preparing motions to dismiss the original complaint and the first amended complaint—are the type of costs defendants incur every day.  The circumstances of this case do not warrant requiring the plaintiffs to pay the defendant the fees it incurred to date as a condition for granting leave to amend.

IV.      **Conclusion**

The plaintiffs' motion for leave to file the second amended complaint (Docket Entry No. 15) is granted as to the deletion of the state-law claims and the FDCPA claims under § 1692e(3) and (5); granted as to the claim under § 1692g(a)(4)-(a)(5); granted as to the class action allegations with respect to this claim; and denied as to the other FDCPA claims.   The defendant's motion for judgment on the pleadings, (Docket Entry No. 21), as supplemented by the defendant's response to the plaintiffs' motion for leave to amend, (Docket Entry No. 22), is granted in part and denied in part.   The motion for judgment on the pleadings is denied as to the claim under § 1692g(a)(4)-(a)(5), and granted as to the other claims.   A status conference is set for **October 3, 2011**, at 10:30 a.m. in Courtroom 11-B to set a schedule to resolve the remaining claims.

SIGNED on September 26, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

30